NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 18, 2006
Decided February 16, 2007

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 05-4652

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

*v.*

DAVID L. EVANS,
　　　　　*Defendant-Appellant.*

Appeal from the United States
District Court for the
Central District of Illinois.

No. 05 CR 10017

**Joe Billy McDade**,
*Judge*.

**O R D E R**

David Evans was indicted for possession of a firearm by a felon under
18 U.S.C. § 922(g). After the district court denied his motion to suppress evidence
that police recovered from a warrantless search, Evans entered a guilty plea but
reserved the right to appeal the court's suppression ruling.

Evans was a suspect in a nonfatal shooting in Peoria, Illinois. The police
learned he was staying at Sandra Sanford's apartment, so Peoria Police Detective
Mark Lamb, accompanied by three other officers, went to Sanford's apartment to
look for him. Lamb knocked on the door and identified himself as a police officer.
The parties dispute what happened next. Detective Lamb and Sergeant Mike
Eddlemon testified that Sanford opened the door and Lamb asked if they could
come in and talk with her. Sanford agreed, and the police officers entered the

apartment's narrow, hallway-like foyer.  Lamb asked whether there were other people in the apartment; Sanford hesitated, said "yes," and looked over her shoulder toward a bedroom.  The officers heard someone moving about in the bedroom, drew their weapons, and ordered the person in the bedroom to come out with his hands up.  Evans came to the bedroom doorway and the officers arrested him.  Through the bedroom doorway they observed a handgun on the floor next to the bed.  Lamb asked Sanford for her consent to search the apartment, and she said "go ahead."

Sanford told a different story at the suppression hearing.  She said she did not consent to the police entry and search.  She testified that she partially opened her apartment door and talked to the officers while they were standing outside.  After she acknowledged there was someone else in the apartment, the officers drew their weapons, rushed in, and pushed her aside to arrest Evans.  In rebuttal, the government called Special Agent Matt Galecki of the Bureau of Alcohol, Tobacco, and Firearms, who testified that Sanford told him later in the investigation that she had given the officers permission to enter and search her apartment.  The government also introduced Sanford's grand jury testimony, which differed in certain respects from her testimony at the suppression hearing.

The district court denied Evans's motion to suppress the handgun, finding that Sanford voluntarily consented to the police entry and search.  In reaching its decision, the court considered the discrepancies between Sanford's grand jury testimony and her testimony at the suppression hearing.  Before the grand jury, Sanford stated, "Well, first when [the police] came in, they asked was Mr. Evans was [sic] here, and I looked back and I was like, yeah, I didn't see him on the bed no more; he disappeared."  The court considered this testimony in the context of the physical layout of Sanford's apartment, including the long, narrow hallway connected to the apartment's front door.  The district court inferred that if Sanford had been standing deep enough into her apartment to be able to turn her head to look into the bedroom, the police must have been inside the apartment prior to attempting to apprehend Evans, rather than outside the apartment as Sanford maintained at the suppression hearing.

We review a district court's factual findings in the context of a motion to suppress for clear error, *United States v. Saadeh*, 61 F.3d 510, 517 (7th Cir. 1995), and give "great deference to the district court's determinations of the witnesses' credibility." *United States v. Strache*, 202 F.3d 980, 985 (7th Cir. 2000).  While the general rule is that warrantless entry into a home to conduct a search is presumptively unreasonable under the Fourth Amendment, where police obtain voluntary consent "from the individual whose property is to be searched" or "from an individual with the apparent authority to consent to the search," the search is reasonable.  *Saadeh*, 61 F.3d at 517 (citations omitted).  The government bears the burden of proving by a preponderance of the evidence that consent was given freely and voluntarily based on the totality of the circumstances.  *Id.*

The district court did not clearly err when it found that Sanford consented to the police entry and search of her apartment. The court weighed the evidence, assessed the witnesses' credibility, and ultimately credited the police officers' version of events. Evans argues the district court shifted the burden to prove consent away from the government by relying in part on inferences drawn from Sanford's grand jury testimony. The sole support for his position is the court's statement that "there is nothing in [Sanford's] grand jury statement to suggest that [the police] were not inside her apartment lawfully." Evans reads too much into this statement. The court merely noted that Sanford did not tell the grand jury that the police pushed their way into her apartment without consent—in stark contrast to her testimony at the suppression hearing. The district court was justified in making an adverse credibility determination based on the discrepancies between Sanford's grand jury and suppression hearing testimony.

AFFIRMED.